GEORGE H. HANDY, M.D., State Health Officer
Your predecessor, Dr. Jorris, raised a number of questions concerning an interpretation of the provisions of ch. 156, Stats., relating to activities of funeral directors. It was stated that there is an apparent conflict between present interpretation of the issuance of a funeral director license or a funeral director certificate in good standing in accordance with sec. 156.06, Stats., and the issuance of funeral establishment permits in accordance with sec. 156.105, Stats.
A basic fact situation was presented as follows:
"Funeral Director `A' lives in Town `A' but does not own a funeral establishment and is not an employee of any funeral director. He is doing business at a funeral establishment licensed to funeral director `B' for which he reimburses funeral director `B' a fixed amount each month for the privilege of conducting funerals out of the `B' funeral establishment." *Page 148 
With respect to the foregoing fact situation, the following set of questions were asked:
"For purposes of 156.105 (5), is funeral director `A' considered an employee of funeral director `B', an operating partner of funeral establishment `B', or neither? If this answer is neither, may funeral director `B' allow funeral director `A' to conduct funerals out of his funeral establishment?
The critical statute involved in the questions presented is sec. 156.105 (5), Stats., which reads as follows:
"No operator of a funeral establishment shall allow any licensed funeral director to operate out of such funeral establishment unless such licensed funeral director is the operator of or an employe of the operator of a funeral establishment which has been granted a permit by the department."
The underlined words provide the keys to an interpretation of the above-cited statute. It is well established that words used in a statute are to be given their common understood meaning unless the context clearly indicates that the legislature intended otherwise. Sec. 990.01
(1), Stats.
The word "employe" or "employee" means a person who works for wages or a salary in the service of an employer. Webster's New CollegiateDictionary, 2nd Edition. The term does not embrace the status of an independent contractor. Black's Law Dictionary, 3rd Edition.
It is apparent to me that a person who rents the use of a facility on an as-needed basis is not an employe. Rather, he has the status of an independent contractor who is not subject to the controls implicit in the employe-employer relationship. Therefore, it must be concluded that funeral director "A" is not an employe of funeral director "B."
The second key word in the critical statute under consideration is "operator." The definition section of the statute refers to the "operator of funeral establishment' `["] as meaning "any person who conducts, maintains, manages or operates a funeral establishment." Sec. 156.01 (9), Stats. *Page 149 
A fair reading of the statutory definitions cited above indicates that an operator of a funeral establishment is the person responsible for the day-to-day management of the mortuary business. He need not be a funeral director. The scope of the business is much broader than the duties of a director. The funeral establishment operator may be likened to a proprietor of a business. 38 Am. Jur. 2d, Funeral Directors and Embalmers, § 22.
In view of the foregoing, I conclude that funeral director "A" is neither an "employe" nor an "operator" within the meaning of sec. 156.105 (5), Stats.
The language of the statute seems clear enough. It is apparent that the legislature intended to prevent funeral directors from freelancing and to eliminate the itinerant funeral director. The history of the statute indicates that this is the correct view of what the legislature intended to accomplish by enactment of subsec. (5).
Prior to 1933, it was not necessary for funeral directors to secure licenses. Chapter 302, Laws of 1933, created secs. 156.04 and 156.06, Stats., as amended, setting forth the requirements for licenses and renewal of licenses respectively. In 1941, one of my predecessors was asked to interpret sec. 156.06, relating to the renewal of the funeral director's license. The statute required then, as it does now, that an applicant for the renewal of a funeral director's license be doing business at a recognized funeral establishment at the time he applies for his license. This requirement was held to be sufficiently met by showing that the applicant had a contract with the owner of a funeral establishment permitting him to conduct funerals there and that such contract need not be for the full license year, merely that it be in effect at the time of the granting of the renewal license. 30 OAG 139. In the wake of this opinion, the succeeding legislature enacted present 156.105 (5), Stats., prohibiting an operator of a funeral establishment to allow funeral directors to conduct funerals out of his business establishment unless they were either an employe of an operator or an operator of another establishment. Thus, the legislatures sought to eliminate a freelance funeral director. *Page 150 
The next question with respect to the basic fact situation is as follows:
"Does such an association disqualify funeral director `A' from having a funeral director's license in accordance with 156.04 (1) (2), 156.06 and 156.105 (1) (5) or any other existing statutes?"
The proscription contained in the statute under discussion, i.e., sec. 156.105 (5), runs against operators not funeral directors. The penalty imposed upon operators for violating the provisions of the statute in question is either suspension or revocation of the funeral establishment permit. Sec. 156.105 (4), Stats. The penalty would not disqualify funeral director "A" from being licensed. Licensing statutes are strictly construed in favor of the individual against the government on the theory that such legislation is penal in nature and therefore requires a rule of strict construction. 51 Am. Jur. 2d, Licenses and Permits, § 58.
The third question relating to the original fact situation set forth at the beginning of this opinion is as follows:
"If the answers to the two preceding questions do not allow funeral director `A' and `B' to do business as described above, may this conflict with the law be avoided by issuing two or more funeral establishment permits for the same establishment under two or more separate business names? If yes, what minimum facilities are required with each permit?"
The operation of more than one funeral home from a single location is not prohibited by the statutes. A funeral establishment is defined as "any building or part of a building" which must contain a preparation room properly equipped for the preparation and embalming of dead human bodies for burial, transportation or other disposition. Sec. 156.01 (5), Stats.
The primary requirement in this matter is that such establishments have a preparation room. In the factual situation posed by the question under consideration, each funeral establishment would have a preparation room, jointly operated, *Page 151 
and common to the premises of each establishment. The sanitation purposes of the statute relating to the preparation rooms would be fulfilled. There being no violation of the spirit or letter of the law, funeral establishment permits could be issued to both funeral director "A" and funeral director "B." As noted, the responsibility for the preparation room is a joint enterprise under the factual situation submitted even though the operators of each establishment may be independent of each other for other purposes. It follows that if the preparation room does not come up to department standards, both operators are subject to provisions relating to permit revocation. Minimum facilities required for the issuance of a funeral establishment permit are prescribed by sec. 156.01 (5), Stats., and by Rule H 16.04. Both the cited statute and Rule relate to specific requirements with respect to the preparation room of a funeral establishment. No other specific requirements or regulations as to size or adequacy are imposed.
The final question raised by the opinion request results from the following stated fact situation:
"The answers to questions 1, 2, or 3 may allow a licensed funeral director to conduct funerals out of a funeral establishment which may not be convenient to most of the families he serves. In such a situation the funeral director may do the preparation work in a licensed funeral establishment, returning the body for visitation to the chapel lounge in a convenient church or public building such as a cemetery chapel. This chapel is not necessarily used for the worship service but may be used strictly for visitation purposes."
The specific question asked is as follows:
"In the above situation may such a licensed funeral director, on a permanent basis, use a church chapel or public building such as a cemetery chapel strictly for funeral visitation purposes to circumvent the law requiring him to have funeral establishment?"
Generally speaking, the regular use of a church for funeral services is not precluded by licensing requirements. The business of a funeral director "commences when the work *Page 152 
of the physician ends and continues until the final disposition of the body." 38 Am. Jur. 2d, Funeral Directors and Embalmers, § 3. It is obvious that his work cannot be confined to a particular building. Moreover, the statutes provide that funeral services may be held in any private residence, church, or lodge hall. Sec. 156.105, Stats. Where there is no mortuary in a particular area, it would seem apparent that, in order to accommodate kin and friends of the deceased, funeral services necessarily must be conducted elsewhere than a funeral home. Accordingly, where a licensed funeral director regularly holds services in such areas, there can be no objection by the department to such regular use of a particular chapel provided that the director holds a current license, that statutes relating to preparation and transportation are observed, and that his actions conform to professional and business ethics as provided by sec. 156.12 (4), Stats. Had the legislature intended otherwise, it appears to me that the statutory language relating to the use of private residences or churches would have been more restrictive. Reading language that simply does not exist into a statute is in effect legislating rather than interpreting the law.
RWW:WLJ